The **VEMO COMPANY**

v.

The **UNITED STATES.**

No. 589–84C.

United States Claims Court.

Nov. 27, 1985.

Mark S. Beaufait, Seattle, Washington, for plaintiff.

Hillary A. Stern, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

YOCK, Judge.

This contract case comes before the Court on the defendant's motion to dismiss the plaintiff's complaint on the grounds that its claim is time-barred by the statute of limitations prescribed by 41 U.S.C. § 609(a) (1982). The defendant's motion will be treated as a motion for summary judgment, since various evidentiary materials have been submitted for the consideration of the Court in acting on the motion. *See* RUSCC 12(b).

For the reasons discussed herein, the motion is denied. There is no dispute on the material facts.

### *Facts*

On September 30, 1982, The Vemo Company ("Vemo") was awarded Contract No. N62474–80–C–9011 for the construction of the Unaccompanied Enlisted Personnel Housing Complex at the Puget Sound Naval Shipyard, Bremerton, Washington. Commercial Electrical Contractors, Inc. ("CEC") was the subcontractor performing the electrical work for the project under Vemo, the prime contractor. The contract called for the installation of approximately 3,200 feet of high voltage power feeder cable. A dispute arose between Vemo and the Department of the Navy over contract specifications regarding the type of cable to be used in the primary power feeder. Basically, the Navy contended that the contract called for Vemo to use single conductor copper cable, whereas the plaintiff contended that the contract specifications allowed for the use of three conductor aluminum cable. The Navy eventually ordered the plaintiff to use the single conductor copper cable. Vemo thereafter, on January 14, 1983, submitted a request for a change order regarding the cable on behalf of its subcontractor CEC. The Resident Officer in Charge of Construction denied

Vemo's request in a response dated February 8, 1983. On March 16, 1983, Vemo submitted a properly certified claim for an equitable adjustment pertaining to the cable dispute and asked for a final decision by the Navy's contracting officer. On July 22, 1983, Vemo again wrote to the Navy contracting officer requesting a final decision, noting that it had received no response during the 127 days that had passed since its previous request. In late September 1983, the Navy represented that a decision would be reached within a month. That deadline passed, and the Navy subsequently declined to state when the claim would be processed. During February 1984, plaintiff's counsel met with Mr. Emil Wynn, Head Contract Claims Branch, Western Division, Naval Facilities Engineering Command, San Bruno, California. At that meeting, the Navy indicated that a decision on Vemo's cable claim would be forthcoming. When Vemo had not heard from the Navy by March 28, 1984, it again wrote to Mr. Wynn requesting that a final decision be reached.

Subsequently, in early August 1984, plaintiff's counsel traveled to Washington, D.C., to meet with Mr. Paul Bonacoursi at the headquarters of the Naval Facilities Engineering Command (NFEC), Alexandria, Virginia. At this point, the claim had been transferred to NFEC from San Bruno for evaluation. Mr. Bonacoursi indicated that a decision on the claim would be issued in approximately two weeks. When two weeks had passed with no decision being made, plaintiff notified the Navy by letter dated August 29, 1984, that a suit would be commenced in the Claims Court if the claim was not resolved by September 7, 1984. No resolution was forthcoming, and on November 13, 1984, plaintiff filed a direct access complaint in this Court. Subsequently, the contracting officer issued a written decision on December 4, 1984, denying Vemo's claim, which was received by Vemo on December 12, 1984. In that final decision, the Navy informed the plaintiff that it could bring an action directly in this Court within twelve months of its receipt.

## Discussion

█ The defendant has now moved to dismiss this action asserting that the plaintiff's claim is time-barred by section 609(a)(3) of the Contract Disputes Act of 1978 (CDA). 41 U.S.C. § 601 et seq. (1982).

In support of its motion to dismiss the plaintiff's complaint, the defendant argues that the 60-day period within which a contracting officer must issue a decision started running for plaintiff's claim on March 16, 1983. This was the date that Vemo had submitted its properly certified claim to the Navy's contracting officer. When the claim had not been decided within 60 days, i.e., on May 16, 1983, the claim was "deemed" denied under section 605(c)(5) of the CDA. The defendant contends that the twelve-month statute of limitations of section 609(a)(3) then began running from that date—i.e., May 16, 1983. Thus, the Government asserts that the plaintiff had until May 16, 1984, twelve months from the date of the "deemed" decision, to file its claim within section 609(a) of the CDA or be forever barred. Since the plaintiff did not file its direct access complaint in this Court until November 13, 1984, its claim is time barred, and the complaint should be dismissed.

The plaintiff has responded with three basic points in opposition to the Government's motion. First, the plaintiff contends that the Government has misinterpreted section 605(c)(5) of the CDA, in that this provision is, in fact, permissive and not mandatory, thereby giving the plaintiff the choice of filing suit if the contracting officer has not yet reached a final decision within the relevant 60-day time period. Second, the plaintiff asserts that the one-year statute of limitations, contained in section 609(a)(3) of the CDA, only relates to the time period that begins to run after the contracting officer has issued an actual final decision, and not a deemed final decision. Third and finally, the plaintiff argues that it is inequitable and unjust to place on the plaintiff the burden of filing what may be a premature and costly suit when it is the Government's dereliction of

duty that is the heart of the problem. This is especially inequitable and unfair when the Government is promising at every step of the proceeding to render a final decision forthwith, as are the circumstances of this case.

As earlier indicated, this Court agrees with the plaintiff's contentions in this regard and therefore denies the Government's motion.

Title 41 U.S.C. § 609(a) (1982) provides in pertinent part:

(1) * * * [I]n lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Claims Court, notwithstanding any contract provision, regulation, or rule of law to the contrary.

　　*　　　*　　　*　　　*　　　*　　　*

(3) Any action under paragraph (1) * * *shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim, and shall proceed de novo in accordance with the rules of the appropriate court. [Emphasis supplied.]

In addition, 41 U.S.C. § 605(c) (1982) provides in pertinent part:

(2) A contracting officer shall, within sixty days of receipt of a submitted certified claim over $50,000—

(A) issue a decision; or

(B) notify the contractor of the time within which a decision will be issued.

(3) The decision of a contracting officer on submitted claims shall be issued within a reasonable time, in accordance with regulations promulgated by the agency, taking into account such factors as the size and complexity of the claim and the adequacy of the information in support of the claim provided by the contractor.

(4) A contractor may request the agency board of contract appeals to direct a contracting officer to issue a decision in a specified period of time, as determined

by the board, in the event of undue delay on the part of the contracting officer.

(5) Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this chapter. However, in the event an appeal or suit is so commenced in the absence of a prior decision by the contracting officer, the tribunal concerned may, at its option, stay the proceedings to obtain a decision on the claim by the contracting officer. [Emphasis supplied.]

With these sections of the CDA in mind, the Court can now turn to the positions of the respective parties in this action.

The plaintiff's first position in opposition to the defendant's motion is that the Government has misinterpreted section 605(c)(5) of the CDA in that the provision is in fact permissive and not mandatory, thereby giving the plaintiff the choice of filing a direct-action suit in the United States Claims Court if the contracting officer has not yet reached a final decision within the relevant 60-day time period.

The critical statutory language to interpret in the first instance is contained in the first sentence of section 605(c)(5) of the CDA. That section reads:

Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this chapter. [Emphasis supplied.]

The plaintiff emphasizes the words "will authorize" in the sentence to support its assertion that the provision is permissive, not mandatory. The Government, however, chooses to emphasize the words "will be deemed" in the sentence to support its argument that the language is mandatory. Read in its entirety, however, this Court

believes that the plain language of the entire sentence supports the plaintiff's permissive argument. To rely on the Government's interpretation, would, in this Court's judgment, put the proverbial cart before the horse. Congress, by its language, apparently chose to "deem" an action on the part of the Government to have been accomplished even though it actually had not been done. Then, however, Congress chose (in the same sentence) to provide for the consequences of the action "deemed." In short, the plain language of the sentence provides that the contractor has the legal *option* or *permission* to go forward, when the Government has not issued a timely decision, by filing a direct access suit in the United States Claims Court. Sovereign immunity has been waived in this regard to make up for the dereliction of duty on the part of Government contracting officers.

Although this Court believes that the language of the sentence discussed above is not ambiguous, but is plainly and ordinarily understood in only this way, it has reviewed the legislative history of the CDA for any guidance that that history might offer. That history, however, is almost totally devoid of any direct help pertaining to this particular sentence.

Although Congress never specifically addressed the issue of the use of section 605 as a jurisdictional bar to direct access to this Court on a contract claim, the general tenor of the legislative history is such to suggest that this argument was not anticipated by Congress and, furthermore, would conflict with some of the CDA's explicitly expressed goals. One of the primary goals of the statute was to avoid litigation and encourage negotiated settlement of disputes between the parties. A second goal was to speed up the decision-making process for the contractor's benefit.

Representative Herbert E. Harris, II, of Virginia, introduced an earlier version of the CDA, H.R. 3745 and stated:

Generally, the bill does the following:
   \*    \*    \*    \*    \*    \*

2. It establishes a policy that contractor claims should be resolved by mutual agreement in lieu of litigation as much as possible and encourages agencies to provide contractors the opportunity for informal conferences for disposing of claims by mutual agreement.

*Contract Disputes: Hearings Before the Subcomm. on Administrative Law and Governmental Relations of the Comm. on the Judiciary House of Representatives* (on H.R. 664 and Related Bills), 95th Cong., 1st Sess. 67 (1977).

The legislative history shows that a third goal of the CDA was to aid contractors hampered by the long delays present in the contracting officers' decision-making process. The Committee on the Judiciary, reporting on H.R. 11002, which eventually was enacted as the CDA, noted that:

Witnesses at the hearings asserted that a common problem confronting contractors is delay on the Government's part in issuing appealable decisions on claims which cannot be resolved by mutual agreement. This section would provide a remedy in that it would require contracting officers to issue such decisions promptly when it becomes apparent that settlement at the contracting officer level is not feasible. As stated, the provisions would require the issuance of an appealable decision within 60 days from receipt of written notice from the contractor.

*H.R. Rep. No. 95–1556, 95th Cong., 2d Sess. 18 (1978). See also Contract Disputes Act of 1978: Joint Hearings Before the Subcomm. On Federal Spending Practices and Open Government of the Comm. on Governmental Affairs and the Subcomm. on Citizens and Shareholders Rights and Remedies of the Comm. on the Judiciary United States Senate* (on S. 2292, S. 2787, S. 3178), 95th Cong., 2d Sess. 92–93 (1978) (statement of Honorable Lester A. Fettig, Administrator for Federal Procurement Policy, OMB); 124 Cong.Rec. 36261, 36267 (1978) (statement of Senator Byrd).

It appears, then, from the legislative history of the CDA, that the applicable sec-

tions involved herein were remedial in nature and designed primarily for the benefit of Government contractors who were experiencing unduly long delays at the hands of Government contracting officers. Thus, to allow the Government to use as a shield (or read as allowing for the use as a shield) this provision contained in section 605(c)(5) would, in this Court's view, be inappropriate and not consistent with the plain language of the statute or the goals of the CDA as enunciated in the legislative history of the Act.

The defendant's argument in this case has already been directly addressed by this Court in *G & H Machinery Co. v. United States*, 7 Cl.Ct. 199 (1985), and found wanting. In that case, the contracting officer similarly failed to issue a decision within the 60-day period. The Government argued that the 12-month period of limitations began to run 60 days after the date on which the contracting officer received the plaintiff's letter of July 15, 1982; and, therefore, that the limitations period expired long before May 1, 1984, when plaintiff filed its complaint with this Court. Judge White of this Court rejected defendant's argument, noting that "It seems to the court, however, that the defendant's position on this point would compel the plaintiff to bear the consequences of the contracting officer's dereliction of duty in failing to perform his deciding function within the time allowed by law for this purpose. Such a result would be unfair...." *Id.* at 203. This Court agrees with Judge White's holding in this matter.

In an analogous situation, this Court did not allow the Government to burden a plaintiff-contractor with the consequences of its own inability to issue a decision on time.

In *Brookfield Constr. Co. v. United States*, 228 Ct.Cl. 551, 661 F.2d 159 (1981), the plaintiff, as of March 1, 1979, had seven claims for equitable adjustments to a joint-venture contract for the construction of a hurricane barrier for the United States Army Corps of Engineers. Oral agreement had been reached on three of the claims before the March 1 effective date of the Contract Disputes Act, but no final modification, memorandum of understanding, or other writing had been issued at that time due to an alleged lack of program funds to pay for the settlements.[1] The Government argued that the plaintiff's claims were no longer "pending" before the contracting officer after the oral agreements were made, and that the plaintiff was completely barred from receiving interest under the Contract Disputes Act. The court held that a plaintiff's claim remained pending until a written settlement agreement or contract modification embodying that settlement was issued as a final contracting officer's decision. Since this did not occur until after the effective date of the Act, the orally-settled claims were still "pending" before the contracting officer for purposes of section 16 as of March 1. The court noted that the contracting officer could have issued a written decision at the time of (oral) settlement but chose not to do so as a matter of the Government's convenience. The court held that "The Government cannot take such an action for its own benefit and then later seek to ignore its consequences." *Brookfield Constr. Co. v. United States, supra,* 228 Ct.Cl. at 563, 661 F.2d at 167.

■ For all of the above reasons then, the Court agrees with the plaintiff's first and critical argument to the effect that section 605(c)(5) of the CDA is in fact permissive, thereby giving the plaintiff the choice of filing or not filing suit if the contracting officer has not reached a final decision within the relevant 60-day time period.

The plaintiff's second argument, which asserts that the one-year statute of limitations contained in section 609(a)(3) of the CDA, only relates to the time period that begins to run after the contracting officer

---

1. The March 1, 1979 date was significant as the effective date of the Contract Disputes Act. Section 16 of the Act provides that "the contractor may elect to proceed under this Act with respect to any claim pending then before the contracting officer or initiated thereafter." 41 U.S.C. § 601 (note).

has issued an *actual* final decision, and not a *deemed* final decision, is really the flip side of the plaintiff's first argument. If the language is read to be permissive in section 605(c)(5), it naturally follows that the one-year statute of limitations contained in section 609(a)(3) is not in any way connected to that permission or authority; otherwise, of course, section 605(c)(5) would have to be read as a mandatory provision. Reading section 605(c)(5) as permissive clearly means that there is no statute of limitations trigger that is activated when the contracting officer fails to issue a timely decision. That, however, does not concern this Court because the Government can start the one-year statute of limitations running *at any time it chooses* by simply doing what section 605(c)(2) manditorily requires it to do, *i.e.*, issue a final decision within 60 days or within a reasonable time.

It is evidence that Judge White agreed with this position in *G & H Machinery Co. v. United States*, 7 Cl.Ct. at 203 when he stated:

> The various factors previously mentioned persuade the court that the 12-month limitations period prescribed by section 609(a)(3) on the commencement of an action in this court does not begin to run until the receipt by the contractor of a decision by the contracting officer on the claim. (This assumes, of course, the filing by the contractor of a proper and timely claim with the contracting officer.) On the other hand, section 605(c)(5) authorizes a contractor, without awaiting a decision by the contracting officer, to institute an action for judicial relief at any time after the expiration of the period which section 605(c) allows the contracting officer for the issuance of his decision.

The plaintiff's third and final point in opposition to the defendant's motion, asserts that it is inequitable and unjust to place on the plaintiff the burden of filing what may be a premature and costly suit when it is the Government's dereliction of duty that is the heart of the problem.

As earlier indicated, this Court also agrees with this third argument. From March 16, 1983, when the plaintiff submitted its certified claim to the contracting officer, through to November 13, 1984, when the plaintiff filed its direct action suit in this Court, the plaintiff was in frequent contact by telephone or letter with the Navy urging them to make a final decision in this matter. The Navy always promised that the decision would be forthcoming in the near future. Finally, the plaintiff's patience ran out some 20 months after it had originally filed its claim with the Navy contracting officer. Under these factual circumstances, it would simply be unfair and inequitable to allow the Government to use its own dereliction of duty and violation of the provisions of section 605(c)(2) of the CDA as a shield to protect itself. The law does not contemplate such an absurd result, nor will this Court tolerate such a result.

Section 605(c)(2) places the burden on the Government contracting officer to issue a final decision on a claim within 60 days or notify the contractor when the decision will be issued. Section 605(c)(3) further mandatorily directs the contracting officer to issue the decision within a reasonable time, taking into consideration the complexity of the claim and the adequacy of the evidentiary support. Section 605(c)(4) then swings back to permissibly allow the plaintiff to petition an agency board for an order directing a contracting officer to issue an unduly delayed decision. Reading section 605 in its entirety, one cannot come to any other conclusion but that Congress did not want the burden of responsibility for delayed decisions to rest on Government contractors. It placed the burden of responsibility on the Government for delayed decisions and that, under this decision, is where the responsibility will stay. In short, it would be inequitable and unfair to shift the burden of responsibility for delayed decisions to Government contractors in general, or to the plaintiff contractor in this case in particular, and Congress understood that when it enacted section 605 of the CDA.

In addition, of course, this Court would not be pleased by the prospect of being

flooded with premature lawsuits that may be capable of being negotiated and settled. Negotiation and settlement of claims should be encouraged by the courts and not discouraged. Holding for the Government in this case would be a victory for a hyper-technical legal argument and would lead to absurd practical results.

For all of the above reasons then, the Government's motion is denied.

### Conclusion

For the reasons discussed above, the defendant's motion to dismiss, which the court has treated as a summary judgment motion, is denied. The parties are to continue their discovery in preparation for trial of this action.