FRIEDMAN, Circuit Judge.
 

 The principal issue in this appeal from the United States Claims Court is whether, under the Contract Disputes Act of 1978, Pub.L. No. 95-563, 92 Stat. 2383 (1978) (codified as amended at 41 U.S.C. §§ 601-609 (1982 & Supp.1985)) (Disputes Act), the twelve-month period within which a contractor must file in that court a suit challenging a decision of a contracting officer begins to run when the claim submitted to the contracting officer is “deemed denied” because the contracting officer has not decided the claim within the period the Disputes Act specified. The Claims Court held that the limitations period began to run when the claim was deemed denied and dismissed the suit as untimely because it had not been filed within twelve months of such “deemed denial.” We hold, however, that the limitations period does not begin to run until the contracting officer renders an actual written decision on the contractor’s claim, and we therefore reverse the Claims Court.
 

 I
 

 A. The appellant, Pathman Construction Company, Inc. (Pathman), entered into a contract with the United States General Services Administration (Administration) to install interior furnishings in a federal office building. The project was substantially completed on September 23, 1975, although various finishing items and work under change orders continued into 1976.
 

 
 *1575
 
 On September 28, 1976, Pathman submitted a claim for equitable adjustment of $428,608.17, seeking delay-related costs for itself and its two principal subcontractors. Pathman subsequently amended its claim to $522,907.58. Pathman and representatives of the Administration had numerous meetings in an attempt to settle the claims. Although settlement offers were made and discussed, the parties failed to reach agreement.
 

 On May 10, 1978, the contracting officer informed Pathman that the government acknowledged Pathman’s entitlement to an equitable adjustment and offered $202,-000.00 in settlement. Pathman rejected the offer. The contracting officer then “requested an audit of [Pathman’s] records, relative to [the] contract, for the purpose of determining the extent of ... entitlement to extend overhead costs,” and told Path-man that no further action would be taken on its claim until after the auditors had completed review of Pathman’s records and submitted their recommendations. The audit was conducted during May, June, and July, and the audit report was issued on August 17, 1978.
 

 Despite repeated requests by Pathman for a decision on its claim, no decision was forthcoming. On February 16, 1981, Path-man submitted a written request to the contracting officer for a final decision. Pathman expressed its concern that the decision of the contracting officer was “long overdue” and its hope that its claim be handled as “expeditiously” as possible. Again, no decision was rendered.
 

 On May 6, 1983, Pathman submitted a second written request for the contracting officer’s decision. The request included the certification that is required for claims in excess of $50,000.
 
 See
 
 41 U.S.C. § 605(c)(1) (1982). Pathman thereafter made additional written requests that the contracting officer render a decision.
 

 To date, however, no decision has been rendered on Pathman’s claim.
 

 B. On March 11, 1985, Pathman filed suit in the Claims Court seeking
 
 de novo
 
 determination of the claim pursuant to section 10(a) of the Disputes Act.
 
 See
 
 Pub.L. No. 95-563, § 10(a), 92 Stat. 2383, 2388 (1978) (codified at 41 U.S.C. § 609). That section requires that such an action be filed “within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim____” The Act further provides that the failure of the contracting officer “to issue a decision on a contract claim within the period required [under the Act] will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this Act.” Pub.L. No. 95-563, § 6(c)(5), 92 Stat. 2383, 2385 (1978) (codified at 41 U.S.C. § 605).
 

 On the government’s motion, the Claims Court dismissed the suit as untimely. The court noted that Pathman had submitted its certified claim with request for final decision to the contracting officer on May 6, 1983. The court held that Pathman’s claim had been “deemed denied” sixty days thereafter because at that time the contracting officer had neither (1) rendered a decision on the claim, nor (2) set a definite future date when such decision would be rendered, as the Disputes Act required the contracting officer to do. According to the court, this “deemed denied” decision triggered the running of the twelve-month limitations period for filing suit in the Claims Court. Since Pathman filed suit on March 11,1985, more than twelve months after its claim was deemed denied on July 5, 1983, the court concluded that Pathman’s suit was untimely.
 
 Pathman Constr. Co., Inc. v. United States,
 
 10 Cl.Ct. 142 (1986).
 

 II
 

 The decision of the Claims Court that the twelve-month limitation period in the Disputes Act for filing suit in that court begins to run when the contract claim is “deemed denied” stands in juristic solitude. Five other decisions of that court, both before and after the decision in this case, have reached a contrary result.
 
 Malissa Co., Inc. v. United States,
 
 11 Cl.Ct. 389, 391 (1986);
 
 LaCoste v. United States,
 
 9 Cl.Ct. 313, 315 (1986);
 
 Turner Constr. Co.
 
 
 *1576
 

 v. United States,
 
 9 Cl.Ct. 214, 215-16 (1985);
 
 Vemo Co. v. United States,
 
 9 Cl.Ct. 217, 220-22 (1985);
 
 G & H Mach. Co. v. United States,
 
 7 Cl.Ct. 199, 203 (1985). Three different boards of contract appeals also have come out the other way.
 
 Guy F. Atkinson Co.,
 
 No. 4693 (ENG. BCA Feb. 19,1987);
 
 Roebbelen Eng’g, Inc.,
 
 47 F.C.R. 108 (DOT BCA 1986);
 
 Blake Constr. Co., Inc.,
 
 87-1 BCA ¶ 19523 (VABCA 1986).
 

 We conclude that the language of the Disputes Act, its legislative history, and its basic purpose demonstrate that, contrary to the conclusion of the Claims Court in this case, the twelve-month limitations period for bringing suit in the Claims Court does not begin to run until the contracting officer has issued his decision on the contractor’s claim. Accordingly, Path-man’s suit was timely filed, and the Claims Court erred in dismissing it.
 

 A. The pertinent provisions of the Disputes Act are sections 6(c) and 10(a)(1), (3). The former provides:
 

 (c)(1) A contracting officer shall issue a decision on any submitted claim of $50,-000 or less within sixty days from his receipt of a written request from the contractor that a decision be rendered within that period. For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.
 

 (2) A contracting officer shall, within sixty days of receipt of a submitted certified claim over $50,000—
 

 (A) issue a decision; or
 

 (B) notify the contractor of the time within which such a decision will be issued.
 

 (3) The decision of a contracting officer on submitted claims shall be issued within a reasonable time, in accordance with regulations promulgated by the agency, taking into account such factors as the size and complexity of the claim and the adequacy of the information in support of the claim provided by the contractor.
 

 (4) A contractor may request the agency board of contract appeals to direct a contracting officer to issue a decision in a specified period of time, as determined by the board, in the event of undue delay on the part of the contracting officer.
 

 (5) Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in [the Disputes Act]____
 

 Pub.L. No. 95-563, § 6(c), 92 Stat. 2383, 2384-85 (1978) (codified at 41 U.S.C. § 605(c) (1982)).
 

 Section 10(a)(1) provides that “in lieu of appealing the decision of the contracting officer under section 6 to an agency board, a contractor may bring an action directly on the claim in the [United States Claims Court], notwithstanding any contract provision, regulation, or rule of law to the contrary.” Pub.L. No. 95-563, § 10(a)(1), 92 Stat. 2383, 2388 (codified as amended at 41 U.S.C. § 609(a)(1)). Section 10(a)(3) states:
 

 (3) Any action under [section 10(a)(1) ] ... shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim, and shall proceed de novo in accordance with the rules of the appropriate court.
 

 The Act thus specifies the time within which the contracting officer is to “issue a decision” on a submitted claim, and provides that a suit in the Claims Court to review “the decision of the contracting officer concerning the claim” must be filed within twelve months of the “receipt by the contractor” of that decision. The Act also provides an exception to this requirement. If the contractor fails to “issue a decision on the contract claim” within the period specified for such issuance, such failure “will be deemed to be a decision by the contracting officer denying the claim” and “will authorize the commencement of the ... suit on the claim as otherwise provided
 
 *1577
 
 in” the Act. Pub.L. No. 95-563, § 6(c), 92 Stat. 2383, 2384-85 (1978) (codified at 41 U.S.C. § 605(c)).
 

 The “deemed denied” provision of the Act merely "authorize[s]” the contractor to file suit. It does not require him to do so. The word “authorize” is
 

 commonly interpreted as permitting (rather than mandating) an action.
 
 Webster’s Ninth New Collegiate Dictionary
 
 117 (1985) defines the word in terms of other permissive language such as “sanction,” “empower” and “justify,” and in phrases such as, “to invest esp. with legal authority” and “to furnish a ground for.” Nowhere in the various definitions does the author indicate usage of the word in a mandatory sense.
 

 Blake Constr. Co., Inc.,
 
 87-1 BCA at ¶ 19523.
 

 By “authorizing” the contractor to file suit, “the plain language of [section 6(c)(5) ] provides that the contractor has the legal
 
 option
 
 or
 
 permission
 
 to go forward, when the Government has not issued a timely decision, by filing a direct access suit in the United States Claims Court.”
 
 Vemo,
 
 9 Cl.Ct. at 220 (emphasis in original). The provision is designed to enable the contractor to obtain a judicial determination of its claim (or a determination by a board of contract appeals, if the contractor follows that procedure) without awaiting the decision of a contracting officer who has failed to render a decision within the specified time limits. Nothing in the language of section 6(c)(1) even suggests, however, that in giving the contractor this remedy Congress intended to compel him to use it. The contractor’s right to institute suit under the “deemed denied” provision is permissive, not mandatory.
 

 If Congress had intended to require the contractor to bring suit within twelve months of the contracting officer’s failure to render a timely decision, it presumably would have explicitly said so, as it did in other provisions of the Disputes Act that create mandatory requirements. For instance, section 6(a) provides that all claims by a contractor “shall be in writing and shall be submitted to the contracting officer for a decision,” and section 6(c)(1) states that for claims of more than $50,000 the contractor “shall certify that the claim is made in good faith.” Similarly, in section 8(e) Congress directed that an agency board of contract appeals “shall provide to the fullest extent practicable, informal, expeditious and inexpensive resolutions of disputes.” Instead of using such mandatory language, however, in section 6(c)(5) Congress used the permissive phrase “will authorize.”
 

 Our conclusion is further supported by the language in section 10(a)(3) that an action in the Claims Court must be filed within twelve months “of the receipt by the contractor of the decision of the contracting officer concerning the claim____” In a “deemed denied” situation, there is no “decision of the contracting officer” that the contractor receives. The concept of “receipt ... of the decision of the contracting officer” involves the actual physical receipt of that decision by the contractor. As the Claims Court pointed out in one of its decisions that disagreed with the decision in this case, “[tjhere can be no ... actual ‘receipt’ of a decision which does not truly exist but whose existence is only ‘deemed’ for the purpose of authorizing suit on the undecided claims.”
 
 Turner Constr. Co.,
 
 9 Cl.Ct. at 216.
 

 The government suggested at oral argument that when a claim is “deemed denied” it should, at the same time, also be “deemed received” by the contractor. This view ignores the provision that the twelvemonth limitation only begins to run upon “the receipt by the contractor of the decision of the contracting officer.”
 

 Equally unpersuasive is the Claims Court’s view in this case that this argument “places undue emphasis on the word ‘receipt.’ ”
 
 Pathman,
 
 10 Cl.Ct. at 149. The “receipt” of the contracting officer’s decision by the contractor is the critical event that starts the running of the limitations period.
 

 The importance of this receipt is shown by the requirements in section 6(a) of the Act that the contracting officer’s decision must be in writing, that the con
 
 *1578
 
 tracting officer must mail or otherwise furnish a copy of the decision to the contractor and that the decision “shall inform the contractor of his rights as provided in the Act.” Pub.L. No. 95-563, § 6(a), 92 Stat. 2383, 2384 (1978) (codified at 41 U.S.C. § 605(a)). A contracting officer’s final decision that does not give the contractor adequate notice of its appeal rights is defective and therefore does not trigger the running of the limitations period.
 
 Institute of Modem Proc., Inc.,
 
 83-2 BCA ¶ 116,649 (DOTCAB 1983);
 
 Oregon Land-works, Inc.,
 
 83-2 BCA ¶ 16,638 (AGBCA 1983). Where a contracting officer has not rendered a final decision, the contractor has not been apprised of his appeal rights, as the Act requires.
 

 In view of the detailed specification Congress provided for the content and furnishing of the contracting officer’s decision to the contractor, it is most unlikely Congress intended the twelve-month limitation period to start running on the “deemed denial” of the claim, which by definition the contracting officer never furnished to the contractor and which the contractor therefore never received.
 

 B. The legislative history of the Disputes Act confirms that the “deemed denied” provision merely authorizes, but does not require, a contractor to institute suit if the contracting officer has not decided the claim within six months. When the bill that ultimately became the Disputes Act was first introduced in 1976, Senator Chiles, the sponsor of the legislation, said that section 5(c), the predecessor to present section 6(c), “sets a time limit of 30 days [later changed to 60 days] in which the contracting officer must take action and issue a decision. It offers an option to the contractor to commence action on a contract claim absent a decision by a contracting officer only once the time limit has been exceeded.” S. 3512, 94th Cong., 2d Sess., 122 Cong.Rec. 16180, 16184 (1976). The House Committee Report on the bill that was eventually enacted stated that “a failure to render a decision within the 60-day period is to be considered a denial so as to permit appeal....” H.R.Rep. No. 1556, 95th Cong., 2d Sess. 18 (1978). The Senate Committee Report similarly stated that the intent was “to insure that a contracting officer will act promptly on all claims and if he should arbitrarily delay, the contractor has recourse to obtaining a decision____” S.Rep. No. 1118, 95th Cong., 2d Sess. 1, 21,
 
 reprinted in
 
 1978 U.S. Code Cong. & Ad. News 5235, 5255.
 

 The legislative history also indicates that Congress intended the “receipt” of the contracting officer’s decision by the contractor to be the sole event that triggers the running of the limitations period. An earlier version of the Disputes Act provided that appeals had to be filed within the required period after receipt of a final decision by the contracting officer or “as otherwise provided in [the Disputes Act].” S. 2292, 95th Cong., 1st Sess., 123 Cong.Rec. 36831 (1977). Congress later changed this language to eliminate the reference to another provision of the Disputes Act as triggering the running of the limitations period. In light of this action, it is difficult to believe that Congress intended the limitations period in section 10(a)(3) to begin to run when the claim was deemed denied under section 6(c)(5).
 

 C. 1. A major purpose of the Disputes Act was “to induce resolution of contract disputes with the government by negotiation rather than litigation.”
 
 Great Lakes Educ. Consultants v. Federal Energy Management Agency,
 
 582 F.Supp. 193, 195 (W.D.Mich.1984). The principle the Claims Court announced in this case would thwart rather than aid that policy.
 

 Application of that principle frequently would force a contractor to file suit before there have been adequate opportunities to resolve through negotiation the factual and legal issues relating to the claim. Many claims submitted to contracting officers are extremely complex, and require detailed and protracted study and discussion before the parties can negotiate a settlement.
 
 See, e.g., Roebbelen Eng’g, Inc.,
 
 47 F.C.R. at 112. Initial submissions regarding the claims often are inadequate, and additional information frequently is required before a claim can be resolved.
 
 Id.
 
 At times, the “subsequent submission of additional infor
 
 *1579
 
 mation [leads] to negotiated settlements by contracting officers____”
 
 Id.
 

 Although the Disputes Act requires a contracting officer who cannot resolve a claim within sixty days to notify the contractor when the decision will be issued, apparently not all contracting officers do that. In the absence of such notice or if the contracting officer gives notice but is unable to meet his own deadline, the Claims Court decision in this case would require the contractor to file suit within one year. In complex cases the time required for the contracting officer to fully and fairly consider the claim may be lengthy. Compelling the contractor to file suit at what may be a relatively early stage of its negotiations and discussions with the contracting officer is likely to impede the free exchange of vital information between the contractor and the contracting officer that is necessary for a settlement.
 

 Moreover, the Claims Court rule here announced adversely affects “the dynamics of post-claim settlement negotiations at the administrative level.”
 
 Malissa,
 
 11 Cl.Ct. at 391. That rule prematurely can require the contracting officer and the contractor to become adversaries in litigation. Such an adversary posture is likely to increase the tensions between the parties and decrease the probability of successful negotiation of the dispute.
 

 2. The Claims Court relied upon two policy considerations to support its decision. First, it was concerned that unless “deemed denied” decisions triggered the twelve-month limitations period in section 609, the limitations period for filing suit might be suspended indefinitely if the contracting officer failed to render a decision. This concern is inappropriate, however, since the contracting officer always can start the running of the limitations period simply by issuing a final decision. Once he does that, the limitations period begins to run.
 

 The government cannot take advantage of its own failure to perform its statutory obligations.
 
 See Brookfield Constr. Co. v. United States,
 
 228 Ct.Cl. 551, 661 F.2d 159, 167 (1981) (contracting officer may not deny contractor interest under the Disputes Act where government's own delay caused the claim to remain pending on the effective date of the Act). In the present case, Pathman timely submitted its claim to the contracting officer and made repeated requests that the contracting officer render a decision.
 
 Cf. LaCoste,
 
 9 Cl.Ct. at 315-16 (claim barred by laches where contractor unreasonably delayed in submitting claim to contracting officer). It was the contracting officer who failed to fulfill his obligation to render a timely decision, and who has caused undue delay in the resolution of Pathman’s claim. Under such circumstances,
 

 it would simply be unfair and inequitable to allow the Government to use its own dereliction of duty and violation of Section 605(c)(2) of the [Disputes Act] as a shield to protect itself. The law does not contemplate such an absurd result____
 

 See Vemo,
 
 9 Cl.Ct. at 222.
 

 The other policy justification asserted by the Claims Court was that interest would continue to accrue on the contractor’s claim where the contractor delayed in bringing suit.
 
 Pathman,
 
 10 Cl.Ct. at 147. According to the court, “[t]o allow contractors to delay the bringing of suit for limitless periods would expose the government to liability for limitless interest.” This concern is equally unfounded, however, since the contracting officer may limit the amount of interest for which the government may be liable by issuing a final decision, which triggers the limitations period.
 
 See Vemo,
 
 9 Cl.Ct. at 222. As a board of contract appeals recently explained:
 

 This apprehension about interest charges running misses the realities of the procurement, claim, and appeal process. It is the Contracting Officer who has the singular responsibility for issuing a final decision, not the contractor. The Contracting Officer has the exclusive power to issue a final decision, which will trigger the limitation periods for appeal or suit found in the [Disputes Act]— In short, the Contracting Officer always has the power to issue a final decision, which starts the limitation period, if he is
 
 *1580
 
 concerned about the accrual of interest on the underlying claim.
 

 Guy F. Atkinson Co.,
 
 No. 4693 (ENG. BCA Feb. 19, 1987).
 

 D. The government urges that Pathman’s claim is time-barred because the time limitations in the Disputes Act constitute a waiver of sovereign immunity that must be strictly construed.
 
 See, e.g., Soriano v. United States,
 
 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). It has never “been the rule that consents-to-suit must be given the narrowest possible scope or that legislation granting jurisdiction of actions against the sovereign must be read apart from history, legislative purpose, or the dictates of commonsense.”
 
 Navajo Tribe v. United States,
 
 218 Ct.Cl. 11, 586 F.2d 192, 201 (1978) (citations omitted),
 
 cert. denied,
 
 441 U.S. 944, 99 S.Ct. 2163, 60 L.Ed.2d 1046 (1979). As we have explained, the language, legislative history and basic purposes of the Disputes Act indicate that the limitations period for filing suit does not begin to run until the contracting officer renders a decision on the claim and the contractor has received the decision.
 

 The doctrine of sovereign immunity does not support the government’s strained and artificial reading of the Disputes Act.
 

 Ill
 

 The government’s final contention is that even if Pathman’s claim is not barred by the twelve-month limitations period in 41 U.S.C. § 609, the claim is barred by the six-year limitations period in 28 U.S.C. § 2501 (1982). Section 2501 provides that “[e]very claim of which the United States Claims Court has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.” The government argues that section 2501 bars Pathman’s claim because performance of the contract was completed in September of 1975 and more than six years elapsed before Pathman filed suit in the Claims Court.
 

 Section 2501 does not bar Path-man’s claim. Because Pathman’s claim was pending before the contracting officer on the effective date of the Disputes Act (March 1, 1979), Pathman had the option to pursue its claim under either the disputes clause of its contract or under the Disputes Act. 41 U.S.C. § 601 note (1978). Path-man’s certification and submission of its claim to the government on May 6, 1983, was a valid election to proceed under the Disputes Act.
 
 Cf. Tuttle/White Constructors, Inc. v. United States,
 
 228 Ct.Cl. 354, 656 F.2d 644, 647 (1981) (contractor need not expressly state that he is electing to proceed under the Disputes Act). Once a contractor elects to proceed under the Disputes Act, the six-year statute of limitations in 28 U.S.C. § 2501 is not applicable.
 
 LaCoste,
 
 9 Cl.Ct. at 314;
 
 Kasler/Con-tinental Heller/Fruin Colnon v. United States,
 
 9 Cl.Ct. 187, 189-90 (1985);
 
 Z.A.N. Co. v. United States,
 
 6 Cl.Ct. 298, 303 (1984).
 

 CONCLUSION
 

 The judgment of the Claims Court dismissing Pathman’s claim as untimely is reversed, and the case is remanded to that court for further proceedings.
 

 REVERSED AND REMANDED.