POLICY ANALYSIS CO., INC., Plaintiff,

v.

THE UNITED STATES, Defendant.

No. 00–254C.

United States Court of Federal Claims.

Oct. 4, 2001.

Anthony H. Anikeeff, Washington, DC, for plaintiff.

Michael S. DuFault, Washington, DC, with whom was Acting Assistant Attorney General Stuart E. Schiffer, for defendant.

## *OPINION*

MILLER, Judge.

This case is before the court after completion of briefing on defendant's motion to dismiss. The issue for decision is whether this case was timely filed under the Contract Disputes Act of 1978, 41 U.S.C. § 609(a)(3) (1994) (the "CDA"), which requires that "[a]ny action … shall be filed within twelve months from the date of the receipt by the

contractor of the decision of the contracting officer concerning the claim." Although defendant's motion is cast as one pursuant to RCFC 12(b)(1), dismissal for lack of subject matter jurisdiction, the Federal Circuit has held that the CDA's one-year limitations period does not implicate the court's subject matter jurisdiction, but suggests that plaintiff has not stated a claim upon which relief can be granted. *Borough of Alpine v. United States,* 923 F.2d 170, 171–72 (Fed.Cir. 1991); *see also Ariadne Fin. Servs. Pty. Ltd. v. United States,* 133 F.3d 874, 878 (Fed.Cir. 1998).[1] Thus, although the court has jurisdiction over claims brought under the CDA,[2] defendant's motion challenges whether the facts alleged constitute an actionable claim. Accordingly, defendant's motion will be treated as under RCFC 12(c), and, as defendant has submitted materials outside the pleadings, its motion, in turn, will be considered under RCFC 56. *See* RCFC 12(c); *Schy v. Susquehanna Corp.,* 419 F.2d 1112, 1115–16 (7th Cir.1970); *J.M. Huber Corp. v. United States,* 27 Fed.Cl. 659, 661–62 (1993). Argument is deemed unnecessary.

## FACTS

On March 13, 1998, the United States Army Corps of Engineers, Mobile District (the "Corps"), awarded Policy Analysis Co., Inc. ("plaintiff"), Purchase Order No. DACA01–98–P–0540 to organize and conduct a seminar on future environmental challenges and policy issues facing the Corps and to provide a report of the seminar's findings. By letter dated February 18, 1999, the contracting officer sent plaintiff, via certified mail, a notice to cure based on alleged failure to comply with certain terms and conditions of the purchase order. On March 19, 1999, the contracting officer sent plaintiff, via certified mail, a letter demanding that plaintiff show cause why the purchase order should not be terminated for default. On April 27, 1999, the contracting officer sent plaintiff, via certified mail, notice of his decision to terminate the purchase order for default. The return receipt for the April 27 letter was signed on April 30, 1999. On May 2, 2000, plaintiff filed a complaint in the Court of Federal Claims, seeking damages due under the purchase order for work performed and damages caused by the termination for default.

Each letter was addressed to commercial mailbox 2040, rented by William L. Renfro, plaintiff's president and sole full-time employee, from the Press Building Mailbox Co. ("Mail Box"). Mr. Renfro rented the mailbox address "in connection with a number of ... business activities including those of Policy Analysis." Declaration of William L. Renfro, May 17, 2001, ¶ 3. The mailbox address was utilized "for communications between Policy Analysis and the Army regarding the contract." *Id.* ¶ 8. The mailbox address was listed as the address of Policy Analysis on the March 13, 1999 purchase order, and on a modification to the purchase order dated April 27, 1998. The parties do not dispute that the mailbox address was the proper address for correspondence from the contracting officer.

Mailbox 2040 was operated out of Frank's Duplicating, Inc. ("Frank's Duplicating"), located at 202 National Press Building, Washington, DC 20045. The October 25, 1995 contract between Mr. Renfro and Mail Box provided:

---

1. The plaintiff in *Borough of Alpine* filed a claim after expiration of the 12–month deadline for filing appeals under the CDA. 923 F.2d at 171. On appeal, the Federal Circuit affirmed dismissal, but insisted: "The Claims Court has and will continue to have jurisdiction over the subject matter of Contract Disputes Act cases. However, in this case, because of its failure to file a timely appeal, Alpine was not entitled to have the Claims Court *exercise* its subject matter jurisdiction." *Id.* at 171 n. 1. *Compare generally Wood–Ivey Sys. Corp. v. United States,* 4 F.3d 961, 968 (Fed.Cir.1993) (Plager, J., concurring) *with id.* at 964–968 (Nies, J., dissenting).

2. Jurisdiction in the Court of Federal Claims is proper under the Tucker Act, this Court's basic jurisdictional statute, which provides: "The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract ...." 28 U.S.C. § 1491(a)(2) (1994 & Supp. V 1999).

Agent will place mail received on behalf of renter in the box each weekday that mail is received from the U.S. Postal Service (there will be no mail placed in the box on Saturday, Sunday or federal holiday).

Upon placing mail for the renter in the assigned box, agent shall have been deemed to have fulfilled all the requirements of this agreement.

No specific provision was made between Mr. Renfro and Mail Box regarding how Mail Box would handle certified mail, or otherwise sign for mail on behalf of Mr. Renfro or plaintiff.

Defendant asserts that plaintiff received the April 27, 1999 notice of termination for default on April 30, 1999, the date on which the return receipt was signed for by an employee of Frank's Duplicating and that, as a result, plaintiff's May 2, 2000 complaint was not filed within the 12–month period prescribed by the CDA. Plaintiff responds that it never received a copy of the April 27 termination notice by mail. Instead, plaintiff asserts that it first learned of the contracting officer's decision to terminate for default on May 10, 1999, from an employee of the Corps. Later that day, plaintiff contacted the contracting officer and received a facsimile copy of the April 27 termination notice.

These prosaic undisputed facts give rise to the issue whether plaintiff's complaint was filed after expiration of the CDA's limitations period. As postulated by plaintiff, the issue is whether the employee of Frank's Duplicating is plaintiff's agent, such that receipt by the employee constitutes receipt by plaintiff and whether the termination notice was properly mailed to the mailbox address.

## DISCUSSION

Summary judgment is appropriate only when the moving party is entitled to judgment as a matter of law and there are no disputes over material facts that may significantly affect the outcome of the suit. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute concerning a material fact exists when the evidence presented would permit a reasonable jury to find in favor of the non-movant. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. The moving party bears the burden of demonstrating the absence of genuine disputes over material facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In its analysis the court may neither make credibility determinations nor weigh evidence and seek to determine the truth of the matter. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.; accord H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984) (noting that non-moving party shall "receive the benefit of all applicable presumptions, inferences, and intendments").

The CDA provides that "[a]ny action ... shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim." 41 U.S.C. § 609(a)(3).[3] The CDA further provides: "The contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this chapter." *Id.* § 605(b).

For purposes of the CDA, defendant asserts that the April 27, 1999 notice of termination for default was received by plaintiff on April 30, 1999, the date on which the return receipt was signed by plaintiff's agent, Frank's Duplicating. Plaintiff's position is that it did not receive the notice of the termination for purposes of the CDA until May 10, 1999, when it received from the contracting officer a facsimile copy of the April 27 letter. Any receipt of the termination notice by an employee at Frank's Duplicating cannot constitute receipt by plaintiff under the CDA, according to plaintiff. Moreover, plaintiff argues that a genuine

---

3. The purchase order contained the standard disputes clauses from the Federal Acquisition Regulations, 48 C.F.R. (FAR) § 52.233 (1996): "This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601–613)."

issue of fact exists as to whether the termination notice was mailed properly.

### 1. Status of Frank's Duplicating as plaintiff's authorized agent

■ A statute of limitations "is a condition on the waiver of sovereign immunity and thus must be strictly construed." *Bowen v. City of New York*, 476 U.S. 467, 479, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). The "actual physical receipt" by the contractor of the contracting officer's decision is the "critical event that starts the running of the limitations period." *Pathman Constr. Co. v. United States*, 817 F.2d 1573, 1577 (Fed.Cir.1987). "Section 609(a)(3) defines timely claims in terms of the receipt date, not the date of actual notice of the contractor's decision. Therefore, the Claims Court must focus its inquiry on the date of receipt by the contractor, not the date of actual notice to the contractor." *Borough of Alpine*, 923 F.2d at 172.

■ In *Borough of Alpine*, the Federal Circuit expressly declined to "read 41 U.S.C. § 609(a)(3) to exclude authorized representatives of a corporate contractor from the terms of the statute." 923 F.2d at 173. The Borough of Alpine, a municipal corporation, filed a claim with the United States Postal Service concerning a contract between the two to split the costs of building a new office. The contracting officer mailed his final decision to the Borough of Alpine, addressing the letter to the Mayor of Alpine. The Borough Clerk signed for the letter. The Federal Circuit held that the statute of limitations began to run when the Borough Clerk signed the return receipt, thereby effectuating receipt of the contracting officer's final decision, instead of when the Mayor distributed the letter to the Borough Council. *Id.* at 172. Critical to its reasoning was the clerk's authority to receive mail for the Borough of Alpine and her receipt of the contracting officer's decision on behalf of the Borough.

The Court of Federal Claims and its predecessors have read section 609(a)(3) to include the contractor's attorney within the terms of the statute. In *Structural Finishing, Inc. v. United States*, 14 Cl.Ct. 447, 449 (1988), the Claims Court held that receipt of

the contracting officer's decision by the contractor's attorney constituted receipt by the contractor. The court relied on several facts analogous to the instant case. First, it was undisputed that the contractor's attorney was the contractor's "duly designated representative." *Id.* at 450. Second, the contractor had done nothing to indicate that the attorney was not the proper party to receive the contracting officer's decision. Third, the parties had established a course of dealing in which the attorney served as the contractor's point of contact with the contracting officer.

Similarly, in *Hamza v. United States*, 36 Fed.Cl. 10, 14 (1996), the plaintiff did not dispute that his attorney had received notice of the contracting officer's decision, but argued that the attorney was not given authority to accept service on the contractor's behalf. In finding that such authority existed, the court relied on the established course of conduct between the Government and the contractor.

Plaintiff insists that it never "authorized anyone else to retrieve mail or to sign for documents on behalf of Policy Analysis," and that it specifically "did not authorize anyone at Mail Box, or Frank's Duplicating to sign for documents on behalf of Policy Analysis." Pl.'s Br. filed May 17, 2001, at 11. Although no specific provision was made between Mr. Renfro and Mail Box regarding how Mail Box would handle certified mail, *see* Renfro Decl. ¶ 4, the contract gave Mail Box express authority to "place mail received on behalf of renter in the box." Plaintiff's suggestion that this language "does not direct Frank's Duplicating to take any affirmative act, such as to sign for a document," Pl.'s Br. filed Aug. 24, 2001, at 7, sweeps aside the plain meaning of the contract. Plaintiff has not suggested any plausible reason to read "mail" narrowly to refer only to certain classes of mail to the exclusion of others. To the contrary, the conduct of the parties to the contract, in which Frank's Duplicating signed for, received, and placed certified mail in mailbox 2040, which was retrieved by Mr. Renfro, confirms that the plain meaning of the provision, creating an agency to receive and place all mail, was the understanding of the parties. Consequently, Mail Box pos-

sessed implied, if not express, actual authority to receive mail, including certified mail, on behalf of Mr. Renfro and plaintiff.

That authority was memorialized in the March 13, 1999 purchase order, which listed the mailbox address as the business address of Policy Analysis. On April 27, 1998, the contract was modified to change the payment address, but the business address for plaintiff remained the same. This authority to receive mail was relied on by the contracting officer, as well as by plaintiff. Both the February 18, 1999 notice to cure and the March 19, 1999 show cause letter were sent, via certified mail, from the contracting officer to plaintiff at the mailbox address and subsequently were retrieved by plaintiff. In neither instance did plaintiff indicate that delivery of certified mail to the mailbox at Frank's Duplicating was improper.[4]

Plaintiff argues that Frank's Duplicating contracted with Mr. Renfro, and not Policy Analysis, and thus no agency relationship could arise on behalf of plaintiff. Mr. Renfro, however, was the president and the only full-time employee of plaintiff during the relevant time period, and thus the only person who could enter into a contractual relationship on behalf of plaintiff. Renfro Decl. ¶ 5. That he did so with respect to the mailbox is clear. Mr. Renfro concedes in his declaration that the mailbox address was rented "in connection with a number of my business activities including those of Policy Analysis." *Id.* ¶ 3. The mailbox address was listed as plaintiff's business address on the March 13, 1999 purchase order and on the April 27, 1998 modification. Mr. Renfro retrieved mail (including certified mail) addressed to plaintiff from the mailbox and used the mailbox address on plaintiff's correspondence with the contracting officer, as well as on his electronic mail to the contracting officer. Plaintiff's absurd argument that the mail arrangements made by its president and sole full-time employee were somehow *ultra vires* and not binding on plaintiff, cavalierly ig-

nores both the apparent authority bestowed on and exercised by Mr. Renfro and his authority to ratify any unauthorized actions taken in plaintiff's name.

Plaintiff nevertheless contends that the application of the principles of agency to the above facts is "inapposite," and would "extend the concept of notice to an unprecedented degree." Pl.'s Br. filed Aug. 24, 2001, at 2. Plaintiff dismisses the cited cases on the grounds that they involve "situation[s] where one with actual responsibility to act received the notice, knew its significance, but failed to alert the client as to a deadline," or where "a trusted, [sic] employee, under the control of the company—not some mailroom clerk over whom the company had no control—triggered the appeal time." *Id.* at 5–6. Plaintiff insists that defendant is required to prove "(1) delivery of the termination notice at issue, (2) to someone affiliated with Policy Analysis who was either charged with acting himself or herself, or was in a position to ensure that someone with authority could act." Pl.'s Br. filed Sept. 24, 2001, at 2.

*Borough of Alpine,* however, indicates that the application of the statute of limitations in the CDA to these facts is straightforward:

> The language of the CDA sets a clear and unambiguous standard. By linking the limitations period to receipt by the contractor, the CDA eliminates disputes about the time of actual notice, fault in misaddressing a letter, or the internal mail procedures of various contractors. To determine compliance with § 609(a)(3), the Claims Court need only check the objective indicia of receipt by the contractor.

923 F.2d at 172. In *Kasler/Continental Heller/Fruin Colnon v. United States,* 9 Cl.Ct. 187, 189 (1985), this court refused to accept an argument that, because the final decision was retrieved from a post office box after normal business hours, the CDA's statute of limitations began to run on the next business

4. Plaintiff argues that "Mr. Renfro would have had no particular reason to know that Frank's Duplicating was signing for certified mail, in that he would not have had occasion to see the cards which were returned to the sender." Pl.'s Br. filed Aug. 24, 2001, at 8. The court takes judicial notice that certified mail uses unique postage, readily identifying an envelope as having been sent certified mail, return receipt requested. Furthermore, the March 19, 1999 show cause letter was clearly marked "Certified P 345 507 395."

day when the decision was stamped "received":

> In effect, plaintiff requests that an exception be engrafted on the CDA to recognize its policy of collecting mail after the close of daily business. Were plaintiff's argument accepted, no objective method would exist for determining the date on which a contracting officer's final decision is received.... The date delimiting the sovereign's waiver of immunity would fluctuate with the vagaries of individual business practices.[5]

These cases illuminate the underlying policy of the CDA to avoid distinctions among the various arrangements by which contractors receive and disseminate mail. As in *Kasler/Continental Heller/Fruin Colnon*, plaintiff in this case requests that an exception be carved out of the CDA to recognize its policy of using a commercial mailbox to receive correspondence from the contracting officer. The court will not allow plaintiff to circumvent the statute of limitations by inserting a buffer between itself and the Government, choosing when the limitations period will run according to when it sees fit to retrieve its mail from the buffer. Because plaintiff selected an agent to receive its mail and decided to conduct its business through that agent, receipt by the agent of the contracting officer's final decision constitutes receipt by the contractor for purposes of the CDA.[6]

Although plaintiff graphically portrays a litany of errors that a witless agent could perpetrate to the detriment of his principal, plaintiff assumed any risk that the agent would fail to perform and transfer the envelope to the correct mailbox. If plaintiff was not willing to bear that risk, it was entirely free to make other arrangements, such as to designate a "trusted employee" or someone else capable of recognizing and acting on a document that affected plaintiff's contractual relationships. Instead, plaintiff elected to have its mail, including sensitive legal documents regarding its contract with the Government, handled by a commercial mailroom clerk over whom plaintiff had little control. As a legal matter of agency, plaintiff received through its authorized agent the envelope containing the default termination notice on April 30, 1999, more than 12 months prior to filing its complaint in this court. It is irrelevant that plaintiff never actually received the notice mailed to it and received by Frank's Duplicating.

### 2. Issues of fact regarding receipt of termination notice by plaintiff's agent

Unable to avoid the effect of the agency relationship, plaintiff attempts to raise issues of fact as to whether the return receipt signed on April 30, 1999, was for the default termination notice; whether the notice was actually inside the envelope;[7] whether the

---

**5.** Plaintiff further distinguishes *Kasler/Continental* by noting that the court in that case deemed the final decision received when it was retrieved by an employee of plaintiff, not when it was placed in the post office box. Contrary to plaintiff's reading, *Kasler/Continental* expressly stated that the date on which the final decision was retrieved "established the *latest* date for purposes of section 609(a)(3) on which plaintiff subcontractor would be deemed to have received the contracting officer's final decision." 9 Cl.Ct. at 189 (emphasis added).

**6.** The Boards of Contract Appeals have interpreted the CDA in a similar fashion. *See, e.g., Pleasant Logging & Milling Co.*, 80–2 BCA ¶ 14,605, at 72,047–49, 1980 WL 2349 (holding that time began to run under CDA when agency hand delivered final decision to home of contractor's president, even though president was on vacation; board noted that this was practice between parties and that president did not object to such delivery); *M.D. Willner*, 75–1 BCA ¶ 11,011, at

52,419–20, 75–1 BCA P 11011 (holding that final decision sent via certified mail to address on face of contract was received when signed for by contractor's wife, despite fact that contractor was away on business trip); *L & v. Mach. & Tool Works Inc.*, 71–2 BCA ¶ 9035, at 41,960–61, 1971 WL 1684 (rejecting argument that final decision could not be received by "ordinary employee" of contractor and stating: "The receipt of mail is an ordinary business function commonly and uniformly entrusted to clerical personnel. We know of no case, and none has been brought to our attention by appellant, which requires that the clerk who receipts for the mail of a corporation be an officer of the corporation or a person authorized to bind the corporation contractually.").

**7.** Plaintiff asks the court to "take judicial notice from personal experience of having opened an envelope from the mail only to find that it is empty." Pl.'s Br. filed Aug. 24, 2001, at 3 n. 2. Such an event can and does occur, but does not

envelope bore the same address as the return receipt; and whether the return receipt may have become separated from the envelope.

■ "There is a presumption that a properly addressed letter, deposited in the United States mails with postage duly prepaid, has been received by the addressee in the ordinary course of the mail, although such presumption may, of course, be rebutted." *McCallin v. United States*, 180 Ct.Cl. 220, 227, 1967 WL 8869 (1967); *accord Konst v. Florida E. Coast Ry.*, 71 F.3d 850, 851, 853–54 (11th Cir.1996) (citing cases from sister circuits in which presumption has been applied). This presumption arises upon proof that the item was "properly sealed, stamped, addressed, and deposited in the United States mails." *Charlson Realty Co. v. U.S.*, 181 Ct.Cl. 262, 274, 384 F.2d 434, 442 (1967); *accord Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932) ("The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed."); *Davis v. United States Postal Serv.*, 142 F.3d 1334, 1340 (10th Cir.1998) ("Plaintiff's testimony that her attorney mailed the letter to USPS is insufficient because plaintiff has no personal knowledge that her attorney did so. There is no affidavit presented in the record by the attorney or anyone from the attorney's office as to such a mailing, nor is there any testimony regarding the customary mailing practices in the attorney's office that would permit an inference that the letter had sufficient postage and was mailed."); *Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996 (5th Cir.1989) ("The record contains a copy of the properly addressed letter, a certified mail receipt and signed return post cards. Accordingly, we hold that there was sufficient evidence to create a presumption that the

letter was received by [defendant] in the due course of the mail."); *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir.1983) (holding that placing letters in mail may be proved by circumstantial evidence, including sender's customary mailing practices and testimony that letter was seen in envelope and sealed).

Plaintiff attempts to limit the scope of this presumption: "In any event, we are aware of no presumption that a mailed envelope actually contains the documents that a party may allege it to contain." Pl.'s Br. filed Aug. 24, 2001, at 3 n. 2. The common law presumption, however, necessarily encompasses this fact. The cited cases establish that in order to invoke the presumption, the proponent must introduce evidence that the notice was placed in a properly addressed envelope and properly mailed to plaintiff. It then falls to plaintiff to introduce evidence sufficient to support a finding to the contrary, whether a finding that the envelope was empty, a finding that it was never delivered, or a ruling that a finding cannot be made based on disputed facts.[8]

The inquiry becomes whether defendant has presented evidence that the contracting officer properly mailed the notice of default termination, and, if so, whether plaintiff has offered any evidence to support a finding to the contrary. *See Beck*, 882 F.2d at 996–97. Under FRE 301 a presumption does not shift the burden of persuasion as to the fact presumed, but merely "imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption." Plaintiff need only present enough evidence to support a finding of the nonexistence of the presumed fact, the same quantum of evidence necessary to create a genuine issue of material fact under RCFC 56.

■ Defendant offers the Declaration of Joseph W. Moody, the purchasing agent for

rise to more than a mere possibility. The court, however, does recognize the legal rule that the record must contain more than "some metaphysical doubt as to the material facts" in order to present a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

8. *Alco Machine Co.*, 89–3 BCA ¶ 21,955, 1989 WL 65877, which is discussed in greater detail below and on which plaintiff relies heavily, is entirely consistent with this understanding of the presumption.

the Policy Analysis purchase order, who states:

I personally put in an envelope the ... Contracting Officer's Final Decision dated April 27, 1999, which was sent by Certified Mail No. Z 253 652 641 on April 27, 1999, to Policy Analysis, Co., Inc., at its official address listed on its purchase order, which is 2040 National Press Building, Washington, D.C. 20045. The official address used on the envelope, the receipt for Certified Mail, and the domestic return receipt was [sic] the same.

Declaration of Joseph W. Moody, Sept. 13, 2001, ¶ 3 ("Moody Decl. II"). The "green card," i.e., the return receipt, received by Mr. Moody showed that delivery was made to a V. Dickens on April 30, 1999. Declaration of Joseph W. Moody, Aug. 2, 2001, ¶ 4 ("Moody Decl. I").[9] Mr. Moody's testimony triggers the presumption that the notice was mailed to plaintiff. This presumption is supported further by the return receipt evidencing delivery to Frank's Duplicating.

█ Plaintiff offers nothing substantial to question defendant's evidence that the notice was properly sealed, addressed, and mailed to plaintiff at the mailbox and that the return receipt was received indicating receipt by an employee at Frank's Duplicating on April 30, 1999. Plaintiff's adamance that the envelope was never placed in the box or otherwise forwarded to Mr. Renfro is irrelevant. Accordingly, this case is distinguishable from cases in which the presumption is rebutted by testimony of nonreceipt. See Witt v. Roadway Express, 136 F.3d 1424, 1430 (10th Cir.1998) ("Because the presumption is rebuttable, however, evidence denying receipt creates a credibility issue that must be resolved by the trier of fact."); Nunley v. City of Los Angeles, 52 F.3d 792, 793 (9th Cir. 1995) (holding that specific factual denial of receipt of notice rebuts the presumption of receipt, which is to be given no further

weight). Plaintiff has not offered evidence challenging the fact that the notice was signed for—and therefore received—by Frank's Duplicating. Indeed, the Declaration of Mr. Renfro, submitted by plaintiff in its response to defendant's motion for summary judgment, confirms this fact. See Renfro Decl. ¶ 29. The court holds that the failure of plaintiff's agent to perform its contractual obligations does not affect the operation of the presumption that a properly addressed envelope is received in the due course of the mails.

Likewise, plaintiff has not offered evidence sufficient to generate a dispute about whether the notice was included in the envelope, that the envelope was addressed identically to the return receipt, or that the return receipt covered the envelope containing the default termination notice. While it is theoretically possible that plaintiff's contentions are true, summary judgment and evidentiary presumptions require the party against whom they are directed to do more than note the impossibility of absolute certainty. See Matsushita Elec. Indus., 475 U.S. at 586, 106 S.Ct. 1348. They require that party to go forward with some evidence tending to negate the presumption or establish a genuine issue of fact. Measured against this standard, defendant's evidence stands alone and uncontroverted; plaintiff has offered a variety of theoretical possibilities, but has not submitted any evidence to explain why those contentions are any more true for plaintiff than every other alleged recipient of mail. To entertain plaintiff's suggestions without any supporting evidence would undermine the very purpose of the common law presumption-certainty based on uncontested objective indicia of delivery.

Plaintiff's reliance on Alco Machine Co., 89–3 BCA ¶ 21,955, 1989 WL 65877, which, it contends, requires this court to find that defendant has not established the contents of

---

9. Defendant has offered two declarations of Mr. Moody. In his first declaration, Mr. Moody states that the default termination notice "was mailed" to plaintiff at the mailbox address. Moody Decl. I ¶ 4. In apparent response to plaintiff's suggestion that Mr. Moody lacked sufficient personal knowledge to trigger the presumption, see Davis, 142 F.3d at 1340; Wells Fargo Bus.

Credit, 695 F.2d at 944, defendant offered a second declaration in which Mr. Moody states more precisely that he "personally" placed the notice in the envelope. Contrary to plaintiff's interpretation, the refinement in Mr. Moody's declaration raises neither issues of credibility nor uncertainty.

the envelope, underscores its failure to rebut the presumption. In *Alco Machine* a motion to dismiss an appeal as untimely was denied because the Government did not prove that the contractor had received the contracting officer's final decision within the requisite time period. The Government argued that the final decision had been attached to a modification to the contract. The contractor admitted receiving the modification, but certified that it had no attachments. These certifications "specifically identif[ied] what was received." *Id.* at 110,441. *Alco Machine* thus stands for the modest proposition that the presumption that a properly addressed letter, deposited in the United States mails with postage duly prepaid, has been received by the addressee in the ordinary course of the mail can be rebutted by evidence that the letter was not received. *Alco Machine,* however, does not change the fact that plaintiff in this case has offered no such evidence.[10]

Finally, plaintiff alleges that a number of factual errors in the Moody Declaration establish a genuine issue as to his credibility. When resolving a motion for summary judgment, the court may neither make credibility determinations nor weigh the evidence and seek to determine the truth of the matter. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Jay v. Secretary of DHHS,* 998 F.2d 979, 982 (Fed.Cir.1993).

Plaintiff first takes issue with Mr. Moody's assertion that "*[a]ll* mail correspondence to Policy Analysis was sent to its National Press Building address except payments." Moody Decl. I ¶ 1. According to plaintiff, this statement is "patently wrong," Pl.'s Br. filed Aug. 24, 2001, at 8, because a letter from the Army Environmental Policy Institute, with which plaintiff cooperated in performing under the purchase order, was sent to Mr. Renfro's home address. All documents in the record from the contracting officer were sent to the mailbox, and there is no suggestion that Mr. Moody intended to speak for

anyone beyond the contracting officer's office. To the contrary, the ensuing paragraphs of his declaration deal with the February 18, 1999 notice to cure; the March 19, 1999 show cause letter; and the April 27, 1999 default termination notice, each of which originated from the cognizant contracting officer.

Second, plaintiff questions Mr. Moody's assertion that he received return receipts for the February 18, 1999 cure notice and the April 27, 1999 notice of termination for default from "V. Dickins." Moody Decl. I ¶¶ 2, 4. According to plaintiff, suspicion is warranted because Mr. Renfro states that in May of 1999 one of the contracting officers believed that the receipts had been signed for by "V. Decker." The court fails to appreciate the inconsistency, for Mr. Renfro's Declaration, dated and filed on May 17, 2001, states that a Ms. Dickins verified her signature as the signature on the return receipt for the termination notice. Mr. Moody's declaration, dated August 2, 2001, simply incorporates this understanding of the facts.

Third, plaintiff questions Mr. Moody's assertion that the February 18, 1999 cure notice was mailed as a certified letter. Plaintiff bases its doubt on the fact that the March 19, 1999 show cause letter was clearly marked "Certified P 345 507 395," whereas the February 18 cure notice had no such marking. No sentient fact finder could determine that this inconsistency—given Mr. Moody's testimony, the signed returned receipts for the cure notice, and Mr. Renfro's testimony that he received the cure notice—raises a genuine issue as to whether the cure notice was sent and received. It is even more unreasonable for plaintiff to argue that this inconsistency creates an issue of fact as to the credibility of Mr. Moody's testimony that the April 27, 1999 termination notice was properly mailed. Characterizing an attempted evidentiary showing as illusory does not constitute impermissible weighing of evidence. The court rejects the argument that the inconsistency

---

10. Plaintiff did not have the opportunity to present the evidence available to plaintiff in *Alco Machine,* because the envelope containing the default termination never reached an employee of plaintiff. Unfortunately, this was a risk assumed by plaintiff when it decided to conduct its business through an agent and selected that agent to receive its mail. Plaintiff cannot avoid its minimal burden of presenting a genuine issue for trial simply because its agent mishandled a valid subject of the agency.

gives rise to any basis on which to question receipt of the certified final decision.

Last, plaintiff identifies two typographical errors on the certified mail documentation for correspondence from the contracting officer that suggest that Mr. Moody may have mislabeled the envelope containing the default termination notice. The final line of the address on the receipt for certified mail for the March 19, 1999 show cause letter reads "Washington, D[sic] 20045," and the second line of the address on the return receipt for the April 27, 1999 termination notice reads "2040 NATINAL [sic] PRESS BLDG NW." Based on these observations, plaintiff argues:

> Mr. Moody may well have failed to note any typographical errors on the envelope that allegedly contained the default notice.... If such an error had been made— e.g., the address being written as "2050" or "204" instead of "2040"—that would explain how, even assuming Ms. Dickins did sign a return receipt for an envelope with the default termination, she then failed to deliver it to Policy Analysis.

Pl.'s Br. filed Sept. 24, 2001, at 5. In its efforts to create a genuine issue of material fact, plaintiff pyramids a series of inferences that the court deems wholly unjustifiable. In the face of Mr. Moody's testimony, the certified mail receipts, and the signed return receipts, plaintiff cannot raise a genuine issue whether the envelope was improperly addressed in such a way as to prevent plaintiff's agent from identifying plaintiff as the addressee.

Assuming that each factual assertion for which plaintiff has offered some evidence is true, and drawing all justifiable inferences in plaintiff's favor, the legal conclusion that the contracting officer's decision was received by a duly authorized agent of plaintiff is inescapable. Because plaintiff's complaint was filed more than one year after the statute of limitations in the CDA, it fails to state a claim upon which relief can be granted.

## CONCLUSION

Accordingly, based on the foregoing,

Defendant's motion for summary judgement is granted, and the Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED.**

No costs.