**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**June 13, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 02-30627

STEVENS SHIPPING AND TERMINAL COMPANY; ET AL

Plaintiffs,

STEVENS SHIPPING AND TERMINAL COMPANY

Plaintiff-Appellant,

VERSUS

JAPAN RAINBOW II MV, its engines, tackle, & apparel, in rem;

Defendant-Appellee,

and

RUBY TRADING S A

Claimant-Appellee.

Appeal from the United States District Court
For the Eastern District of Louisiana, New Orleans

Before DUHÉ, EMILIO M. GARZA, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Plaintiff-Appellant, Stevens Shipping & Terminal Co., Inc., ("Stevens"), claimed a maritime lien for agency and stevedoring services that it rendered to the M/V JAPAN RAINBOW II in Savannah,

Georgia, in February 2001. The district court, however, found that Stevens provided those services with actual knowledge that the charter party of the M/V JAPAN RAINBOW II contained a prohibition of liens clause, and that the time charterer who hired Stevens, Tokai Shipping Co., Ltd. ("Tokai"), could not incur liens or pledge the credit of the vessel to secure Stevens's charges. The district court, therefore, held that Stevens could not hold a maritime lien for the services it provided, and Stevens's *in rem* claims against the M/V JAPAN RAINBOW II were dismissed. Stevens now appeals.

## I. BACKGROUND AND PROCEDURAL HISTORY

Stevens and Stevedoring Services of America ("SSA") filed a complaint under Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. Stevens and SSA sought the arrest of the M/V JAPAN RAINBOW II alleging that Stevens and SSA had not received payment for services provided to the M/V JAPAN RAINBOW II in Savannah, Georgia, and New Orleans. Thus, Stevens and SSA alleged they had maritime liens on the M/V JAPAN RAINBOW II. SSA settled its claims and is not a party in this appeal.

Tokai chartered the JAPAN RAINBOW II and dispatched Voyage Instructions to Zodiac Maritime Agencies, Ltd. ("Zodiac"), the vessel owners' managing agent. Ruby Trading ("Ruby") is the claimant-appellee in this case. Stevens served as stevedore and husbanding agent for Tokai. As stevedore, Stevens loaded and

unloaded the JAPAN RAINBOW II, and as husbanding agent, Stevens ordered goods and services for the vessel, such as tug and wharfage services. Stevens would order the services and goods on behalf of the JAPAN RAINBOW II, pay for them, and receive reimbursement from Tokai. If Stevens paid a third party for services provided to the JAPAN RAINBOW II, it took the third party's maritime liens as assignee upon payment.

Clive Ferguson, a Zodiac employee, served as the operations supervisor of the JAPAN RAINBOW II. Zodiac had been aware since late 2000 that Tokai was having financial problems, and Ferguson was instructed to fax a notice of the prohibition of liens clause in the charter to each agent listed in Tokai's voyage instructions. On January 23, 2001, Ferguson faxed the notice to Stevens at the fax number listed in Tokai's voyage instructions. The letter accompanying the notice requested that Stevens notify other Savannah providers about the prohibition of liens clause. The letter also requested that Stevens return an acknowledgment of the notice to Zodiac. Zodiac received a fax confirmation establishing that the letter and notice were successfully transmitted to Stevens at the fax number listed in the voyage instructions. Ferguson testified that faxes were used in the shipping industry as a reliable and customary means of communication.

At a deposition of Stevens through its designated representative, Frank Coslick, Vice President of Finance, Stevens conceded that the fax number to which Zodiac sent the letter and

3

notice belonged to a fax machine in the agency department of Stevens's downtown corporate office in Savannah, Georgia; but contended that the fax machine was in an area separate from the company's administration and was not one that officers would use. Coslick testified that office procedure, when such a fax arrived, would be for Ed Manucy, who was formerly Stevens's general manager of the operations department, or Deborah Tillman, of Stevens's operations department, to notify an officer of the corporation. Corporate office employees from other departments may have used the fax machine on an occasional basis.

Additionally, Stevens shared office space with United Arabs Shipping and a non-profit organization. These entities had their own fax machines and as a general practice did not use Stevens's fax machine; however, they did have access to the machine as it was located off a common area that employees of all three organizations used to access a break room. The room housing Stevens's fax machine was not locked.

As to Stevens's knowledge of receipt of the January 23, 2001, fax, Coslick testified that he did not see the fax. Coslick conceded that of the 15 employees working in Stevens's downtown office, he spoke to less than ten people regarding whether they had seen the fax, and that was approximately one year after the fax was sent. Coslick also testified that Robbie Harrison, Stevens's president, informed Coslick that none of the officers who normally would have been notified of such a fax had seen the document. As

4

discussed below, Coslick's testimony regarding the office procedure when important faxes arrived and Harrison's statement were ruled inadmissable.

On February 20, 2001, when the JAPAN RAINBOW II arrived in Savannah, the vessel's master delivered the notice of the prohibition of maritime liens to Stevens, after Stevens had already started work on the vessel.  Ed Manucy signed the acknowledgment of the notice, editing the phrase, which apparently initially read, "For and on behalf of Charterer's Agent, I confirm acceptance of above," to read, "For and on behalf of Charterer's Agent, I confirm receipt of above."  Manucy also interlineated, "All ILA labor and port/tug charges already committed to prior to receipt of this document."  This document was dated February 20, 2001.  Stevens provided $50,190.11 of stevedoring services and $35,046.54 of third parties' goods and services to the vessel.

Aware that Tokai was in financial trouble, Stevens asserts that it would not have worked the JAPAN RAINBOW II or advanced funds on its behalf but for Stevens's ability to rely on the vessel's credit and receive maritime liens against the vessel. Rather, Stevens would have demanded payment for the services up front.  Stevens asserted its maritime liens by initiating this action on March 13, 2001.  Stevens asserts that it did not know about the faxed notice until after it arrested the boat in New Orleans.

The parties agreed to a trial on the parties' joint

5

stipulations, respective briefs, depositions, and exhibits, in lieu of live testimony. Each party submitted a trial brief, a bench book, and depositions. Stevens attached as exhibits to its trial memorandum the affidavits of three Stevens employees, Manucy, Coslick, and Tillman, indicating that none of the three had notice of the no-liens clause before February 20, 2001. In addition, Stevens attached a series of email correspondence between Stevens and its counsel, indicating that as of March 14, 2001, Stevens was unaware of the January 23, 2001, fax.

Ruby objected to the affidavits and the email correspondence as hearsay. Ruby also objected to portions of Coslick's deposition testimony either because it was hearsay or because Stevens failed to lay a foundation to show that Coslick had personal knowledge of the matters to which he testified. Although Stevens filed a reply to Ruby's objection to the affidavit and emails, Stevens never responded to Ruby's objections to Coslick's deposition testimony.

The district court sustained Ruby's objections and excluded from the trial evidence the objected-to portions of Coslick's deposition, all three affidavits, and the email correspondence. In granting the motion to strike affidavits, the district court reasoned that the parties agreed to submit depositions in lieu of stipulations for the trial on the papers. The parties did not request permission to submit affidavits. According to the district court, had the parties requested such permission, the district court would have denied the request, as the submissions were to

6

take the place of a trial. The district court held that the affidavits and emails were inadmissable hearsay and that Stevens had the opportunity to depose the affiants but chose not to do so.

Turning to the merits of the case, the district court noted the general rule that a party who has actual knowledge of a prohibition of liens clause before supplying goods or services to a vessel cannot later claim a maritime lien for those goods or services. The district court found that the fax confirmation created a rebuttable presumption that Stevens received the notice.

The district court relied upon *Beck v. Somerset Techs., Inc.,* for the proposition that a letter placed in a U.S. Postal Service mail receptacle creates a presumption that it was actually received by the person to whom it was addressed. 882 F.2d 993, 996 (5th Cir. 1989). The district court concluded that, on this record, Stevens failed to offer competent evidence to rebut the presumption that the fax was received. Having received the fax, Stevens had the requisite "actual knowledge" of the prohibition of liens clause. The district court rejected Stevens's argument that Stevens would have to read and sign the fax to have actual knowledge of the no-liens clause. The district court reasoned that a supplier cannot deny knowledge of a no-liens clause when it was delivered in a manner that is customary and reliable in the shipping business. The district court entered a judgment in favor of Ruby and dismissed Stevens's claims with prejudice. Stevens

7

timely filed a notice of appeal.

## II. DISCUSSION

We review the district court's legal conclusions *de novo* in admiralty cases tried without a jury. ***Lake Charles Stevedores, Inc. v. Professor Vladimir Popov MV,*** 199 F.3d 220, 223 (5th Cir. 1999). We review the district court's factual findings under the clearly erroneous standard. FED. R. CIV. P. 52(a). "The clearly erroneous standard of review does not apply to factual findings made under an erroneous view of controlling legal principles." ***Lake Charles Stevedores, Inc.,*** 199 F.3d at 223.

Stevens raises three arguments on appeal. First, Stevens asserts that the district court erred in applying the standards of the Maritime Commercial Instruments and Liens Act ("MCILA"), 46 U.S.C. §§ 31341-31343, to find that Stevens had actual knowledge of a prohibition of liens clause in the JAPAN RAINBOW II's charter. Second, Stevens argues that the district court erred in failing to distinguish Stevens's direct maritime liens from the liens that Stevens allegedly held as an assignee. Third, Stevens argues that the district court erred in striking certain affidavits and email correspondence included as exhibits to Stevens's trial brief. Having heard oral arguments, having carefully reviewed the entire record of this case, and having fully considered the parties' respective briefing on the issues in this appeal, we affirm the judgment of the district court.

First, Stevens argues that the district court erred in finding that the fax confirmation sheet created a rebuttable presumption that Stevens had actual knowledge of the no-liens clause, thus shifting the burden to Stevens to prove it did not have actual knowledge. On appeal of a district court's ruling following a bench trial, this Court reviews the district court's factual findings for clear error and its legal conclusions *de novo*. *Coggin v. Longview Indep. Sch. Dist.,* 289 F.3d 326, 330 (5th Cir. 2002). This Court reviews the allocation of the burden of proof *de novo* and the determinations that the parties met their burdens under the clearly erroneous standard. *Hopwood v. Texas,* 236 F.3d 256, 263 (5th Cir. 2000).

Maritime liens "enable a vessel to obtain supplies or repairs necessary to her continued operation by giving a temporary underlying pledge of the vessel which will hold until payment can be made or more formal security given." *Lake Charles Stevedores, Inc. v. M/V POPOV,* 199 F.3d 220, 223 (5th Cir. 1999) (internal quotations and citation omitted). Under section 31342(a) of the MCILA, "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner--(1) has a maritime lien on the vessel; (2) may bring a civil action *in rem* to enforce the lien; and (3) is not required to allege or prove in the action that credit was given to the vessel." There is no doubt that stevedoring services are necessaries. *Lake Charles Stevedores,*

9

*Inc.*, at 225.  However, a party who knows of a prohibition of liens clause before supplying goods or services to a vessel cannot later claim a maritime lien for those goods or services.  *Gulf Oil Trading Co. v. M/V CARIBE MAR,* 757 F.2d 743, 749 (5th Cir. 1985).

In the case at bar, the district court reasoned that the fax confirmation sheet created a rebuttable presumption that Zodiac delivered the notice and that Stevens received it.  We agree with the district court in this case.  Neither party disputes that facsimiles are a reliable and customary method of communicating in the shipping business.  To quote the district court, in such an industry, "[t]he law simply cannot allow a supplier to deny knowledge of a no lien clause when it was delivered in a manner that was both customary and reliable in the shipping business."  Thus, on the facts of this case, the district court did not clearly err in finding that the preponderance of the evidence showed that Stevens had actual knowledge of the prohibition of liens clause.

Second, this Court need not address whether the district court erred in failing to distinguish Stevens's direct maritime liens from the liens that Stevens allegedly held as an assignee, as the record shows that Stevens failed to put forth evidence that it made payments on behalf of the assignor of the liens.  *See Surgical Care Ctr. of Hammond v. Hospital Serv. Dist. No. 1,* 309 F.3d 836, 840 (5th Cir. 2002).  Third, the district court did not commit clear error in declining to admit the affidavits and email correspondence

10

under the residual exception to the hearsay rule.  *See* ***Magouirk v. Warden, Winn Correctional Center,*** 237 F.3d 549, 554 (5th Cir. 2001).  Based on the foregoing, we affirm the district court.

AFFIRMED.