**RILEY & EPHRIAM CONSTRUCTION COMPANY, INC., Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

No. 03–177C.

United States Court of Federal Claims.

July 29, 2004.

Steven L. Smith, Charlotte, N.C., for Plaintiff.

James D. Colt, Washington, D.C., with whom were Assistant Attorney General Peter D. Keisler and David M. Cohen, for Defendant.

John Bergen, Law Clerk, Berta Treitl, Intern.

## OPINION

BASKIR, Judge.

We hereby **GRANT** Defendant's Motion for Summary Judgment and dismiss Plaintiff's Complaint. We find that Plaintiff received the contracting officer's (CO) final decision via fax on November 27, 2001, and via certified letter to its Post Office (PO) box on November 30, 2001. Plaintiff's instant action, filed in January of 2003, is thus time-barred by the Contract Dispute Act's (CDA) 12–month statute of limitations.

## *BACKGROUND*

As demonstrated by the parties' briefs and confirmed by counsel during oral argument, the facts giving rise to this jurisdictional issue are undisputed. On November 17, 1998, Plaintiff Riley & Ephriam Construction Company (R & E) entered into a contract with the Government to " 'demolish and dispose of an existing nominal six inch thick concrete slab and replace with new con-

crete." Pl. Opp. 2. During the demolition, Plaintiff discovered that the concrete slab in question did not contain the steel bars necessary to complete the project, as had been anticipated. As a result of the change in the work required, and the parties' failure to agree on a price for these modifications, Plaintiff applied for an equitable adjustment to the contract on March 8, 2000, seeking $294,097.

During the fall of 2001, Plaintiff closed its corporate offices and began to handle operations from a home located in Stone Mountain, Georgia 30083. Plaintiff claims this move was "due in large part to the extreme financial hardship imposed by the government's failure to resolve [its] claim." Pl. Opp. 3. Although as a result of this move Plaintiff started to receive business-related mail at the Springleaf Court home address, it maintained its business address at a PO box in Stone Mountain, Georgia 30083.

On November 27, 2001, the CO issued a final decision denying Plaintiff's equitable adjustment. He sent this decision via certified mail to the address Plaintiff had provided as its business address when it submitted its claim-the PO box address. The decision arrived at the United States Post Office where the box was located on November 30, 2001. The letter was accepted, and pursuant to Post Office policy regarding the receipt of certified mail in corporate PO boxes, a notice stating that the letter had arrived was placed in Plaintiff's PO box. Alexander Aff. 1. At this point, the Post Office considered the letter "received by the boxholder [and] available for pickup." *Id.*

On December 19, 2001, the Post Office placed a second notice in Plaintiff's box informing it of the letter's availability for pick up. Although Plaintiff was able to pick up the CO's final decision at any time during a 29–day period, it failed to do so, and consequently, the Post Office returned the package to the CO on December 29, 2001.

In addition to the certified letter, the CO faxed a copy of this decision to Plaintiff's legal representative on November 27, 2001. The fax was sent to the attention of Steven Smith, the attorney "through whom communications to R & E had previously gone," and

it contained a cover letter indicating, "[t]he original document was forwarded to Riley & Ephriam via certified mail on 27 November 2001." Def. Mot. Summ. J. 6, Attach. A.

We asked counsel for the Plaintiff to provide information explaining the internal procedures for receiving official correspondence via fax at his firm. According to him, "all incoming faxes arrive at a central fax machine and are supposed to be delivered to the intended recipient." Pl. Op. Ex. B. However, the Federal Circuit has held that "[b]y linking the limitations period to receipt by the contractor, the CDA eliminates disputes about ... the internal mail procedures of various contractors." *Borough of Alpine v. United States*, 923 F.2d 170, 172 (Fed.Cir. 1991). This holding applies to the internal mail procedures of a contractor's representatives as well. As a result, although we will take into consideration the policies regarding fax delivery at counsel's firm, insofar as these policies are relevant, we will focus our inquiry on the date of receipt, and not on mail handling procedures.

Although there is no fax confirmation sheet, we are satisfied with the CO's undisputed declarations that he sent the fax and that the fax machine indicated a successful transmission, as well as with the copy of the fax cover sheet submitted to the Court. By the same token, Plaintiff's attorney states he never personally received the fax. For purposes of this motion, we will credit counsel's assertion that he had no knowledge of the fax and that he did not personally receive it.

Ultimately, after the fax failed to come to the attention of Plaintiff's counsel and Plaintiff failed to pick up the certified letter sent to its PO box, the CO once more sent his decision via certified mail on January 30, 2002. The letter was sent to counsel, who accepted it and signed the return receipt.

On January 24, 2003, Plaintiff brought suit seeking $306,039.33 in damages, within 12 months of the January 30, 2002, delivery to counsel, but more than 12 months after the earlier apparent deliveries of November 2001.

## DISCUSSION

To resolve this matter, we must determine what constitutes "receipt" under the CDA, and whether either the November 27, 2001, fax or the November 30, 2001, certified letter delivery constitutes legal receipt. Because we conclude that both the fax and the letter resulted in receipt pursuant to the CDA, we find Plaintiff's instant suit, filed in January of 2003, to be time-barred.

### A. Standard for Resolving a Factual Challenge to Jurisdiction on Summary Judgment

Our inquiry into the facts surrounding the timeliness of Plaintiff's claim is necessary to determine whether Plaintiff is entitled to have this Court exercise its jurisdiction over contract disputes. *See* 41 U.S.C. § 609(a)(1); *See also Borough of Alpine,* 923 F.2d at 171 n. 1 ("[F]ailure to file a timely appeal [means a Plaintiff is] not entitled to have the Claims Court *exercise* its subject matter jurisdiction."). Technically speaking, we understand this to mean that the Court is the correct forum to consider this subject matter, but that a Plaintiff who fails to meet the CDA's timeliness requirements has not stated a claim upon which relief can be granted pursuant to RCFC 12(b)(6).

As a formal matter, the Plaintiff has the burden of establishing the Court's jurisdiction. *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583 (Fed.Cir.1993). But in this case, the Government is alleging an earlier date of receipt and thus "[t]he Government must bear the burden of proving when the contractor actually received the final decision." John Cibinic, Jr. & Ralph C. Nash, Jr., *Administration of Government Contracts* 1308 (3rd ed.1995).

Finally, this Court will grant a motion for summary judgment where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c).

### B. Applicable Law

The CDA states, in part:

"[A] contractor may bring an action directly on the claim in the United States Claims Court [United States Court of Federal Claims]. . . . [This] action . . . shall be filed within *twelve months from the date of the receipt by the contractor* of the decision of the contracting officer concerning the claim, and shall proceed de novo in accordance with the rules of the appropriate court.

41 U.S.C. § 609(a)(1), (3) (emphasis added).

The Act further provides: "The contracting officer shall issue his decisions in writing, *and shall mail or otherwise furnish* a copy of the decision to the contractor." § 605(a) (emphasis added). The implementing regulations specify that this decision must be furnished via "certified mail, return receipt requested, or by *any other method that provides evidence of receipt.*" 48 C.F.R. § 33.211(b) (emphasis added).

### C. Plaintiff's Receipt via Fax Machine

The Defendant's first argument in support of its Motion for Summary Judgment is that Plaintiff received a copy of the CO's final decision on November 27, 2001, when that decision was sent to Plaintiff's attorney via fax machine.

 A contractor's attorney who has acted on behalf of the contractor in prior dealings with the CO can receive a final decision under the CDA. *Hamza v. United States,* 36 Fed.Cl. 10, 14 (1996). In addition, this Court's predecessor, whose opinions constitute binding precedent, has found that there is a presumption of reliability that a piece of mail will arrive at its destination: "[t]he law recognizes a rebuttable presumption of fact to the effect that a letter properly addressed and deposited, with duly prepaid postage, arrived in the ordinary course of mails." *Schultz v. United States,* 132 Ct.Cl. 618, 132 F.Supp. 953, 955 (1955).

The Fifth Circuit has held that, where considered a customary and reliable industry means of communication, a fax confirmation sheet creates a rebuttable presumption that a fax was received by the party to whom it was sent. *Stevens Shipping & Terminal Co. v. Japan Rainbow II MV,* 334 F.3d 439, 444 (5th Cir.2003).

█ Defendant has provided several pieces of evidence in conjunction with the November 27, 2001, fax transmission. The evidence shows that on that day, the CO called counsel's law firm, requested the fax number, and proceeded to fax his decision to this number. Def. Mot. Summ. J. Attach. A. The CO's declaration states that "[a]fter the fax machine completed the transmission, the fax machine indicated that the transmission was successful." *Id.* In addition, a copy of the fax cover sheet that the CO sent to counsel clearly indicates him to be the intended recipient and provides the following comments: "[a]ttached is the Contracting Officer's Final Decision. The original document was forwarded to Riley & Ephriam via certified mail on 27 November 2001." *Id.* However we note that the record does not contain the fax-machine-generated notice of successful transmission.

In addition, Defendant has provided phone records which show that a phone call lasting 2.6 minutes was made to the fax number on November 27, 2001. The evidence also demonstrates that the fax number in question was indeed assigned to counsel's law firm during November 2001. Def. Reply Br. Attach. A at 4–5. Although we accept counsel's statement that he did not personally receive a fax from the CO, the evidence is overwhelming-and undisputed-that a fax was sent and received in his law office on that day.

During oral argument, Plaintiff contended that fax transactions are not a method by which a CO can send a final decision under the CDA because this method provides no independent confirmation that a fax has been received. As such, a fax transaction can only provide evidence of transmission. This argument does not withstand the legal requirements imposed by the CDA.

The implementing regulations do not require independent confirmation; they only require that the method used by the CO be one which produces "evidence of receipt." 48 C.F.R. § 33.211(b). A fax transaction does produce evidence indicating whether the item faxed has reached the fax machine of its intended recipient. This evidence includes a fax confirmation sheet, which does not exist in this case, and the electronic message on the fax machine itself. While we suspect that not all fax machines include an electronic message, the particular fax machine used in this case clearly qualifies; the CO stated in his declaration that it had indicated a successful transmission. His statement, as we have said, goes unchallenged.

We therefore conclude that Plaintiff, through its attorney, received the CO's decision on November 27, 2001.

### D. Plaintiff's Receipt via Mail

█ We find that "receipt" also occurred on November 30, 2001, when the CO's certified letter arrived at Plaintiff's business address-the PO box listed on the claim it submitted to the CO.

Defendant has submitted a copy of the envelope in which the letter was mailed. The Station Manager at the United States Post Office where Plaintiff's PO box was located stated in her declaration that the envelope markings demonstrate that the Post Office accepted the letter on November 30, 2001. The markings further establish that "forms notifying Riley & Ephriam that the letter had been received were placed in their box on November 30 and December 19 of 2001." Alexander Aff. 2.

These envelope markings provide the "objective indicia of receipt by the contractor" required to establish receipt under the CDA. *Borough of Alpine,* 923 F.2d at 172. Although Plaintiff never picked up and signed for the letter, the markings on the letter provide the necessary "evidence of receipt" to show that Plaintiff received the CO's decision on November 30, 2001, regardless of whether Plaintiff had actual knowledge of this receipt. *See* 48 C.F.R. § 33.211(b).

Plaintiff argues that receipt could not have occurred on November 30, 2001, because the Post Office is not an agent that can accept mail on Plaintiff's behalf. This argument fails to persuade. Plaintiff is a corporation whose officers rented out a PO box under its name during November 2001. Where a plaintiff is a legal entity, the Federal Circuit has held that " 'receipt by a contractor' must mean receipt by the contractor's authorized

representatives." *Borough of Alpine*, 923 F.2d at 172–173.

Plaintiff's officers implicitly consented to allow Post Office employees to handle and accept mail on behalf of Plaintiff. These employees accepted the certified letter from the CO and placed notices in Plaintiff's PO box notifying Plaintiff of the letter's arrival and availability for pick up. They were acting within the scope of their employment, in accordance with Post Office policy, and in accordance with their obligations arising from Plaintiff's rental of the PO box. As such, the Post Office is authorized, and expected, to accept mail directed to the Plaintiff.

Similarly, this Court has held that an employee of a commercial mail service could receive a CO's decision for purposes of the CDA when accepting mail as part of the scope of his employment, and pursuant to the contract existing between the contractor and the commercial mail service. *Policy Analysis Co.v. United States*, 50 Fed.Cl. 626, 629–30 (2001). The Federal Circuit has likewise ruled that a Borough Clerk can accept a CO's decision on behalf of the Borough even when the letter is addressed to another Borough officer because such acts are within the scope of her employment. *Borough of Alpine*, 923 F.2d at 172.

Although Plaintiff contended that the Post Office's practice of accepting a certified letter without placing it in a PO box does not constitute "actual physical receipt," we differ. Plaintiff agreed to the Post Office's mail practices when it rented a box from the Post Office and used this box as its business address. "Because plaintiff selected an agent to receive its mail and decided to conduct its business through that agent, receipt by the agent of the contracting officer's final decision constitutes receipt by the contractor for purposes of the CDA." *Policy Analysis*, 50 Fed.Cl. at 631.

### E. Defining Receipt: a Closer Look

■ Plaintiff claims that the CDA requires "actual physical receipt." Pl. Opp. 6. According to this standard, Plaintiff argues, receipt of the CO's final decision did not occur until late January 2002, when Plaintiff's attorney received in hand the CO's letter via certified mail and signed a return receipt.

Although Plaintiff is correct that actual physical receipt is required, Plaintiff's application of the standard is erroneous. Actual physical receipt has to do with the physical presence of the CO's final decision on the contractor's premises, one of the reasons why the implementing regulations require that the decision be in writing. *See Pathman Constr. Co. Inc. v. United States*, 817 F.2d 1573, 1577; *See also* 41 U.S.C. § 605(a). A standard of actual physical receipt ensures that the legal fiction of constructive receipt, or "deemed receipt," is not imposed upon a contractor. *Pathman Constr.*, 817 F.2d at 1577. This does not mean, however, that the contractor must have the decision personally in-hand, or that the contractor must have any actual notice or knowledge of the decision. It simply means that a written decision must be accepted on the contractor's premises by a party authorized to do so. *Borough of Alpine*, 923 F.2d at 172–173. As such, receipt is determined "in terms of the receipt date, not the date of actual notice of the contractor's decision. Therefore, the Claims Court must focus its inquiry on the date of receipt by the contractor, not the date of actual notice to the contractor." *Id.* at 172.

Although Plaintiff agrees that notice is irrelevant, it repeatedly refers to "service" of the CO's decision. It stated during oral argument that it believes the principles governing receipt of a CO's decision and those governing service of process are analogous. We disagree. Unlike service of process which initiates a lawsuit, a CO's decision does not have to be delivered to the Plaintiff in a manner that effectuates a party's awareness that the CO's decision has been rendered. The contractor-already on notice that its legal contractual interests are implicated because it has initiated the equitable adjustment claim-is not entitled to this level of knowledge; the statute merely requires receipt.

A standard which requires receipt but not notice serves an important function *vis-à-vis* the CDA's statute of limitations. It prevents "[a] plaintiff [from] circumvent[ing] the stat-

ute of limitations by inserting a buffer between itself and the Government, choosing when the limitations period will run according to when it sees fit to retrieve its mail from the buffer." *Policy Analysis,* 50 Fed.Cl at 631.

### CONCLUSION

We find both the November 27, 2001, fax to Plaintiff's attorney and the November 30, 2001, certified letter sent to Plaintiff each sufficient to constitute "receipt" of the CO's final decision. As a result, the CDA's 12–month statute of limitations ran on Plaintiff's cause of action in November 2002, thereby rendering the instant suit, filed in January 2003, time-barred.

**For the reasons stated above, we GRANT the Defendant's Motion for Summary Judgment.** The Clerk of Court is directed to enter judgment for the Defendant and dismiss the Plaintiff's complaint. Each party to bear its own costs.

**IT IS SO ORDERED.**